UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MICHELLE H SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. 1:16-cv-02019-SEB-MPB |
| NANCY A. BERRYHILL Acting Commissioner for the Social Security Administration, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION ON APPROPRIATE DISPOSITION OF THE ACTION

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 15). Plaintiff Michelle H. Smith brought this suit for judicial review after the Commissioner of Social Security denied her applications for disability benefits under the Social Security Act. Briefing is complete and the matter is ready for submission of this report and recommendation.

## Introduction

In January 2013, Ms. Smith filed applications for disability benefits under the disability insurance (Title II) and supplemental security income (Title XVI) programs of the Social Security Act,[1] alleging a disability that began in October 2012, later amended to February 2013. Her claims

---

[1] Generally, individuals who have accumulated forty calendar quarters of qualifying work (twenty earned during the preceding ten years), have not reached retirement age, and have paid contributions into the program through payroll deductions are eligible for D.I.B. 42 U.S.C. §§ 423(a), 423(c). S.S.I. is a means-tested program that is available to individuals who are not eligible for D.I.B. 42 U.S.C. §§ 1381a, 1382.

were denied on initial and reconsideration reviews by the state agency. (R. 64-116, 122-135.) She requested and received a hearing before an administrative law judge ("ALJ") in November 2014, during which Ms. Smith and a vocational expert testified and she was represented by present counsel. (R. 38-63.) The ALJ issued his decision in January 2015.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by prescribing a five-step sequential evaluation process. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listings include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings

2

equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ— not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-

400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See* [Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999)](#).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. [Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004)](#). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. [Arnett v. Astrue, 676 F.3d 586, 592 (7th Cir. 2012)](#); [Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)](#).

## Analysis

### I. The ALJ's Sequential Findings

The ALJ found that Ms. Smith met the insured status requirements for disability insurance benefits through the end of 2017. At step one of the sequential evaluation process, the ALJ found that Ms. Smith has not engaged in substantial gainful activity since her alleged onset date. At step two, he found that Ms. Smith has the severe impairments of degenerative disc disease of the cervical spine, right shoulder subscapularis tendinopathy, and diabetes mellitus. He found that she had other impairments that were not severe: carpal tunnel syndrome, eye problems, fibromyalgia, high cholesterol, high blood pressure, anxiety disorder, and affective disorder. At step three, the ALJ found that Ms. Smith's impairments, severe and non-severe, singly and in combination, do not meet or medically equal any of the conditions in the listing of impairments.

For the purposes of steps four and five, the ALJ then determined Ms. Smith's residual functional capacity. As part of his analysis, he found that her statements about the extent of her subjective symptoms and resulting functional limitations were not entirely credible. He concluded that she retained the capacity to perform sedentary work with additional exertional and positional restrictions. At step four, the ALJ found that this RFC prevented the performance of any of her

4

past relevant work. At step five, considering Ms. Smith RFC and vocational factors (age, education, and transferability of skills) and relying on the vocational expert's testimony, he found that Ms. Smith could perform the job of hospital admitting clerk, of which 99,000 such jobs exist in the nation and 1,500 exist in the state's economy, (R. 31, 58), and, therefore, she is not disabled. When the Appeals Council denied Ms. Smith's request for review, the ALJ's decision became the final decision of the Commissioner on her claims and the one that the Court reviews.

## II. Review of Plaintiff's Assertions of Error

### A. The ALJ erred in his analysis of Ms. Smith's migraine headaches by failing to include migraine headaches in his Step 2 analysis and by failing to account for them in his RFC determination.

Beginning in 2013, records show that Ms. Smith reported to her physicians that she suffers from headaches or migraines. (R. 336-37, 415, 420, 429, 456, 585, 594, 664.) During an April 2013 consultative examination, she reported that, for the last twenty weeks, she had been getting headaches every other day, accompanied by blurred vision. (R. 415.) In June 2013, she wrote on a state-agency headache questionnaire that she started experiencing headaches in February 2010, when she hit her head on the steering wheel during a car accident; the headaches occur four times a week and last for most of the day; she takes three medications for them; she will then sleep throughout the day; and the headaches are accompanied by light and noise sensitivity and vomiting. (R. 322.) She was referred for a neurological examination in April 2014 for evaluation, (R. 670), and she reported to the examiner that she started experiencing headaches about two weeks after hitting her head during the car accident; the headaches occur three times a week, lasting throughout the day; they are frequently associated with nausea and sometimes with vomiting and light and sound sensitivity. (R. 611-12.) Responding to her attorney's questions during the hearing, Ms. Smith testified that she started experiencing migraine headaches in 2010 after the car

accident; she has had them "off and on" since; and when she's medicated and not moving around, she does not have pain. (R. 45, 47.)

The ALJ mentioned Ms. Smith's headaches once in his decision, when he summarized her allegations of symptoms and impairments at the start of his analysis of their credibility as part of his RFC discussion: "She alleges she has back pain, right arm pain, diabetes, high blood pressure, migraine headaches, neuropathy, and high cholesterol." (R. 26.) He did not mention her alleged migraine headaches in his step-two discussion, did not find them to be a severe impairment, did not find them to be a medically determinable impairment, and he did not evaluate them as any part of his step three, RFC, step four, or step five determinations.

Ms. Smith argues that the ALJ erred by ignoring her migraine headaches. The Commissioner does not defend the ALJ's failure to address them, in effect conceding the error. The Commissioner argues, however, that the error is not grounds for reversal and remand because it was harmless. An error is harmless only if a court is convinced, or can predict with great confidence, that the ALJ *will* reach the same result on remand; an error is not harmless because the ALJ only *might* reach the same result on remand. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015).

The Commissioner argues that the ALJ would reach the same result on remand for several reasons. First, although Ms. Smith claims that her headaches began with her car accident in 2010, it was not until Spring of 2013 that the medical records show she complained to and sought treatment from medical providers. The Commissioner apparently intends this to be a credibility argument, but credibility is an issue for the ALJ to determine, from all of the evidence of record, and it is a discretionary analysis the outcome of which the Court cannot predict with confidence. (Ms. Smith's separate challenge to the ALJ's credibility determination is discussed below.) The

Court does not find that the ALJ's own evaluation of any interval between Ms. Smith's accident and her first reports of migraines is such a foregone conclusion that the ALJ's error is harmless.

Second, the Commissioner argues that the severity and disabling effect of Ms. Smith's migraines cannot be established by her subjective allegations alone but they must be established by medical evidence — signs, test results, and laboratory findings — and she cites no such medical evidence. However, the Commissioner fails to identify what medical signs or findings would establish the existence or history of migraine headaches, let alone their severity and limiting effects. The Court is unaware of such objective medical evidence of migraines or headaches.

Third, the Commissioner argues that evidence of treatments, including medication prescriptions, do not constitute medical evidence establishing the existence or severity of an impairment. But Ms. Smith does not rely solely on the fact that she has received treatment, including medications, for her migraines. She also testified at the hearing about experiencing debilitating migraines and submitted written statements to the same effect. Her treatments also provide some indicatation that her providers believed her complaints, finding her to be credible.

Fourth, the Commissioner argues that Ms. Smith failed to identify any specific functional limitations caused by her alleged migraines. The Commissioner is simply wrong on this point. As noted above, Ms. Smith stated that her migraines occur three or four times a week or every other day; they last all day; they are accompanied by nausea, vomiting, and blurred vision; and they send her to bed for the rest of the day. Obviously, if these allegations are credited, they constitute severe functional limitations. Although the ALJ did not ask the vocational expert specifically about the effects these alleged limitations would have on the number of available jobs, he did ask about the effect of not being able "to persist a full eight hours a day five days a week on a consistent basis," (R. 60), and "because of problems she's having she'd be absent one day per week on average," (R.

7

61), and the vocational expert answered, each time, that no jobs would be available. Thus, Ms. Smith alleged functional limitations that the vocational expert testified would preclude the performance of any jobs. This is significant enough evidence that the ALJ was obligated to address it.

The ALJ erred by failing to articulate his evaluation of Ms. Smith's alleged migraine headaches and the Commissioner has not shown that his error was harmless. The Commissioner's denial should be reversed and Ms. Smith's claims remanded for evaluation of her alleged migraine headaches and for reconsideration of her disability accordingly.

### B. The ALJ's credibility determination was patently wrong.

The ALJ found that Ms. Smith's statements and descriptions of her symptoms and their resulting functional limitations were only partially credible and he accommodated the credible extent of her allegations by limiting her to sedentary work with the additional restrictions. Ms. Smith contends that the ALJ committed four errors in his credibility analysis.

Ms. Smith argues that the ALJ discounted her credibility because he found that her statements were unsupported by medical evidence. While she correctly states that a claimant's statements about her subjective symptoms may not be rejected or discounted solely because they are unsupported by medical evidence, 20 C.F.R. § 404.1529(c)(2), that is not what the ALJ did. He accorded her symptom descriptions less than full credit because he found that they were not fully consistent with medical and other evidence in the record. (R. 28.) That is different from requiring objective medical support of subjective symptoms. The ALJ listed the inconsistencies that he found and the ones that Ms. Smith challenges are discussed next.

The ALJ found that Ms. Smith "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. 28.) The

ALJ summarized her activities: spending time with her sister at home, talking on the telephone, shopping at a grocery store, attending church, regularly attending work, doing some housework (cleaning her house, doing laundry, ironing), preparing meals weekly, and reading the Bible. *Id*. He found that she retains the ability to cook, drive, pay bills, count change, and attend church three times a week. He concluded that "[c]ertainly, these are not the activities and abilities of an individual who is completely unable to engage in any substantial gainful activity with the residual functional capacity above . . . ." *Id*.

Ms. Smith argues that the ALJ ignored the fact that she is able to engage in these activities at her own pace and convenience to accommodate her symptoms and limitations; she is not required to perform them according to the demands of a normal workplace. She cites one of the Court of Appeals' many admonishments against "equat[ing] the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014).

If the ALJ had discounted the credibility of Ms. Smith's descriptions of her disabling symptoms only because they are inconsistent with her daily activites — as his first finding quoted above states — then he would not have run afoul of the Court of Appeals' admonishment. Finding that a claimant's symptom descriptions are not entirely credible because she engages in activities that are inconsistent with those descriptions is a legitimate credibility factor. But the ALJ went further: in his final statement, quoted above, he found that her daily activities prove that she is able to perform substantial gainful activity at the sedentary level (with added restrictions). That equation is what the Court of Appeals has held is inappropriate.

9

The ALJ erred and the Commissioner does not argue harmless error. The Commissioner's decision should be reversed and Ms. Smith's claims remanded for correction of this error and reconsideration.

The ALJ wrote: "There is evidence that the claimant has not been entirely compliant in taking prescribed medications and treatment, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with these applications." (R. 28 (citation omitted).) The only instances that the ALJ mentions is a report by one of her medical providers that the she had not been taking her insulin regularly because she could not afford it and she had not been regularly checking her blood glucose levels. *Id*. The ALJ does not identify any specific symptom allegations by Ms. Smith that her failure to take insulin or to monitor glucose shows to be not credible and such symptoms are not evident to the Court.

Ms. Smith argues that the ALJ erred by relying on her failure to follow treatment to discredit her symptom statements without determining whether her failure was justified and an inability to afford treatment is generally recognized as a justified reason. The Commissioner's only response is that Ms. Smith inproperly bases her argument on S.S.R. 82-59 which addresses a different scenario: when the evidence shows that a claimant's impairment is disabling but a claimant fails, with justification, to follow prescribed treatment that is clearly expected to restore working capacity. The Commissioner contends that Ms. Smith's case is different because she has not been found to suffer a disabling impairment.

The Commissioner is correct that Ms. Smith's reliance on S.S.R. 82-59 is improper because the ALJ did not find that Ms. Smith is disabled because of her refusal, without justification, to take effective, restorative treatments. Rather, the ALJ relied on her failure to follow treatments only to discredit her descriptions of the severity of her symptoms and limitations. However, even this

limited finding was erroneous because the ALJ failed to determine whether Ms. Smith's reason for not taking insulin, affordability, and monitoring her glucose was justified. In addition, as mentioned, the ALJ did not identify and the Court does not discern what alleged symptoms of Ms. Smith's diabetes mellitus or which limitations it allegedly causes that the ALJ found to be not as severe as alleged.

The ALJ erred in relying on Ms. Smith's failure to follow prescribed treatments to discredit her symptom and limitations allegations without determining whether the reasons for her failure were justified and in not identifying the symptoms and limitations in question. The Commissioner does not argue that the error was harmless.

The ALJ wrote that "[a]lthough the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. The lack of more aggressive treatment suggests that the claimant's symptoms and limitations were not as severe as she alleged." (R. 28.) The ALJ provided only one supporting reference to the record: "Timothy Dicke, M.D., diagnosed Ms. Smith with chronic diffuse pain and poorly localized symptoms and stated, 'I do not believe that her symptoms are directly related to carpal tunnel syndrome although this may be an underlying factor. Sensation and motor function remain intact clinically.'" (R. 28-29.)

How this statement by Dr. Dicke shows that Ms. Smith received only routine and/or conservative treatment is obscure, to say the least. Ms. Smith is correct that the ALJ provided no explanation of what "aggressive treatments" were indicated, effective, and available (*e.g.*, affordable and tolerable) for the degree of symptoms and limitations that she described, assuming that she was accurate in her descriptions. Because the ALJ cited no medical evidence to support

11

his assumptions that such treatments existed, they are based solely on his lay opinions. The Court does not have the medical expertise to make such judgments on its own.

The Commissioner adds one supporting reference for the ALJ's finding: one of Ms. Smith's physicians, Dr. Lintner, reported that he could offer her no surgical intervention for her shoulder pain and treated her neck pain with only oral medication and physical therapy. This does not suggest that more "aggressive" effective treatments are available and indicated for Ms. Smith's shoulder and neck pain (if her allegations are deemed credible). Morever, the ALJ himself did not cite the nature of Dr. Lintner's treatment as an example of routine or conservative treatment and the Court reviews only the ALJ's rationale.

Neither the ALJ nor the Commissioner identified any treatments that Ms. Smith was not receiving that would have reasonably promised greater symptom relief, that were available to her, and that reasonably would have been prescribed in her circumstances if her symptom allegations were fully credible. They cited no expert medical evidence or opinion so stating. Absent a contrary showing, the Court reasonably assumes that, when a patient's medical providers balance the potential risks and benefits of possible treatments, considering a patient's unique medical profile and personal circumstances, a "conservative" course of treatment could be the most appropriate, or the only, course. Such an analysis requires medical expertise and none was cited by the ALJ to support his assumption that an unidentified "more aggressive" treatment existed that would have been prescribed if Ms. Smith's symptom allegations were credible. Such an assertion lacks substantial supporting evidence in the record.

The Commissioner's decision should be reversed and Ms. Smith's claims remanded for reconsideration without this error.

### C. The ALJ did not err in determining that Plaintiff's carpal tunnel syndrome was not a severe impairment.

Ms. Smith argues that the ALJ erred in finding that her carpal tunnel syndrome is not a severe impairment. He found it to be an impairment, but not a severe one at step two. (R. 23.) He concluded that it no more than minimally limits her ability to perform basic work activites and that objective medical evidence does not support that it has lasted or can be expected to last for a continuous period of at least twelve months. He cited three items of evidence in support of his finding: (1) Ms. Smith's June 2013 report to the state agency that she looks at Facebook at night, (R. 23, 328); (2) Dr. Agnelneri's findings in his April 2013 consultative examination report that Ms. Smith was able to fully close all her fingers into a fist, button clothing using both hands, and write with the dominant hand, and there was no erythema (reddening of the skin), warmth or swelling in her hands, and no muscle atrophy in her hands, (R. 23, 417); and (3) the opinion of Dr. Timothy Dicke, one of Ms. Smith's treating physicians, that her reported chronic diffuse pain is not directly related to carpal tunnel syndrome although it might be an "underlying factor." (R. 23, 436.)

Ms. Smith argues that (1) the ALJ erroneously equated her use of Facebook to the ability to "manage the requirements of a modern workplace;" (2) Dr. Agnelneri's findings conflicts with the findings of three of her treating physicians and their records noting her reports of pain; and (3) the ALJ ignored, or failed to address, several items of evidence relating to her carpal tunnel syndrome, which she contends show significant pain and limitations.

If an ALJ finds at least one severe impairment at step two and considers a claimant's severe and non-severe impairments in the later steps, an error at step two is harmless. *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Here, the ALJ found three severe impairments at step two and proceeded to the other steps. In addition

13

and alternatively, the ALJ did not equate Ms. Smith's use of Facebook to the ability to maintan full-time work; he considered her use of Facebook as inconsistent with the severe degree of carpal tunnel symptoms and limitations that she alleged. In addition, while Ms. Smith presents a litany of findings and test results by three of her treating physicians that contradict Dr. Agnelneri's findings, she provides no explanation of how those findings support the alleged severity of her carpal tunnel syndrome. In addition, her treating physicians did not confirm, but only recorded, her reports of pain. Finally, ALJs are not required to address every piece of evidence; it is sufficient if they provide their rationale (build a bridge from the evidence to their conclusions) such that a reviewing court can trace the path of their reasoning. Here, the ALJ explained his rationale, the Court can trace his reasoning, and the evidence on which he relies is subtantial.

Ms. Smith has not shown that the ALJ erred finding that her carpal tunnel syndrome is not a severe impairment at step two.

## **Conclusion**

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 16) and that this case be remanded pursuant to sentnece four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Specifically, on remand the Commissioner should consider the following instructions: (1) she must evaluate and articulate her evaluation of Ms. Smith's migraine headaches and their effects, singly and in combination, on her ability to perform substantial gainful activity, according to the five-step sequential evaluation protocol; (2) she must re-evaluate the credibility of Ms. Smith's symptom descriptions based on a proper reconsideration of Ms. Smith's activities of daily living, compliance with prescribed treatments, and nature of treatments received, as explained above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 18th day of August, 2017.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.